ROSSOW v BRENTWOOD FARMS DEVELOPMENT, INC

Docket No. 224060. Submitted November 5, 2001, at Detroit. Decided June 18, 2002, at 9:00 A.M.

    Glenn R. and Ginger K. Rossow brought an action in the Oakland Circuit Court against Brentwood Farms Development, Inc., Brentwood Association, and James and Linda Hogan, seeking to quiet title to the plaintiffs' condominium unit and the removal of an encumbrance and easement on the plaintiffs' property. As a result of staking and surveying errors, a condominium unit co-owned by the Hogans and located next to the plaintiffs' unit had been built too close to the plaintiffs' unit. In order to comply with an association by-law requiring that garages be built as side entry accessible, the Hogans' driveway had been constructed in a manner that encroached on the plaintiffs' property. The association, without first seeking the plaintiffs' consent, had granted an easement over the plaintiffs' property for the encroachment. On motion by the plaintiffs for summary disposition, the court, Denise Langford Morris, J., instead granted summary disposition for the defendants. The plaintiffs appealed.

    The Court of Appeals *held*:

    1. Article IX(A) of the master deed to the condominium project and § 40 of the Condominium Act, MCL 559.140, authorized the grant of the easement. Article IX(A) provides that "[i]n the event any portion of a Site or a residential structure on a Site or Common Element encroaches upon another Site or Common Element due to . . . survey errors or construction deviations, reciprocal easements shall exist for the maintenance of such encroachment for so long as such encroachment exists, and for maintenance thereof in the event of any destruction." Section 40, before its amendment by 2000 PA 379, provided in part: "To the extent that a condominium unit or common element encroaches on any other condominium unit or common element . . . by reason of any deviation from the plans in the construction . . . a valid easement for the encroachment shall exist."

    2. Section 40 of the Condominium Act, as amended by 2000 PA 379, now provides that § 40 shall not be construed to allow or permit any encroachment or easement upon units described in a

master deed without the consent of the co-owner of the unit to be burdened by the encroachment or easement. The amended version of § 40 was enacted after the easement involved in this case was recorded, and it does not apply to this case inasmuch as the amended version has prospective application from its January 2, 2001, effective date in the absence of a clear expression by the Legislature of an intent for retroactive application.

Affirmed.

EASEMENTS — CONDOMINIUMS — ENCROACHMENTS — DEVIATIONS FROM CONSTRUCTION PLANS — CONSENT OF OWNERS OF SERVIENT TENEMENTS.

The Condominium Act authorizes the creation of an easement to the extent that a condominium unit encroaches on another condominium unit by reason of a deviation from construction plans; the amendment of the act that requires the consent of the co-owner of the servient tenement to such an easement applies prospectively from the January 2, 2001, effective date of the amendment (MCL 559.140, as amended by 2000 PA 379).

*Mark F. Makower & Associates, P.C.* (by *Mark F. Makower* and *Christopher Hartman*), for Glenn R. and Ginger K. Rossow.

*Dean & Fulkerson, P.C.* (by *Jeffrey L. Hudson*), for Brentwood Farms Development, Inc., and Brentwood Association.

*Cummings, McClorey, Davis & Acho, P.L.C.* (by *T. Joseph Seward, Francis P. Dempsey, Dana Drebes-Ulrich,* and *Anne McClorey McLaughlin*), for James and Linda Hogan.

Before: NEFF, P.J., and WILDER and COOPER, JJ.

WILDER, J. In this real estate action, plaintiffs appeal as of right[1] from the trial court's order denying plain-

---

[1] Defendants argue that because the third-party plaintiffs Hogan had third-party claims and cross-claims remaining to be decided by the trial court when it granted summary disposition for defendants, plaintiffs were not entitled to appeal as of right and this Court lacks jurisdiction absent an order granting plaintiffs leave to appeal. See MCR 7.212(C)(4) and

tiffs summary disposition pursuant to MCR
2.116(C)(10) and granting defendants summary dispo-
sition pursuant to MCR 2.116(I)(2). We affirm.

### I. FACTS AND PROCEEDINGS

Defendant Brentwood Farms Development, Inc.
(Brentwood Farms), developed the Brentwood Farms
Condominium Project (project), located in White
Lake Township. The project consists of single family
homes built as part of a condominium complex under
the auspices of the Michigan Condominium Act, MCL
559.101 *et seq.* As required under § 8 of the act, Brent-
wood Farms executed a master deed for the condo-
minium project on October 25, 1993, and recorded the
master deed on November 9, 1993. MCL 559.108.
Brentwood Farms attached a site plan as part of the
master deed.

On December 22, 1993, plaintiffs signed a land con-
tract to purchase Unit 82 of the project. A warranty
deed for Unit 82 was recorded on June 19, 1997. Both
the warranty deed and the site plan attached to the
master deed state clearly that Unit 82 was part of
Brentwood's condominium project. Sometime after
October 1996 and before the end of 1997,[2] James and

___

(D)(2). However, defendants did not identify this issue as a question
presented, MCR 7.212(D)(3), and following plaintiffs' appeal filing, the
trial court granted the Hogans' stipulation to withdraw their remaining
claims so that this appeal could be heard in an expeditious fashion.
Because defendants did not properly preserve this issue for appeal, MCR
7.212(D)(3), the remaining issues before the trial court were subsequently
dismissed, and the resolution of this issue is not dispositive of this case,
we decline to address it.

[2] The lower court record does not contain the exact purchase date of
Unit 83. Defendants Hogans' brief on appeal contends Unit 83 was pur-
chased on October 4, 1996. Both Brentwood's and plaintiffs' briefs claim

Linda Hogan purchased a condominium home with side entry garage and asphalt driveway located at 2379 Mayfair. The home was constructed on Unit 83 of the condominium project, which is adjacent to Unit 82. On or about September 30, 1996, Unit 83 was surveyed by Kem-Tec Surveyors. Kem-Tec's survey discovered that the asphalt driveway located on Unit 83 encumbered Unit 82 by approximately nine feet. According to Brentwood Farms, the encumbrance occurred because a surveying and staking error was made before the Hogans' home was constructed, so that the home was built too close to plaintiffs' property to allow for entrance into an attached side entry garage if the driveway was located entirely within Unit 83. Because the by-laws of the association require all garages to be built as side entry accessible, the driveway was constructed in such a way that it resulted in the encumbrance on plaintiffs' property.[3]

On October 5, 1998, Brentwood Association recorded an easement over Unit 82 for the benefit of Unit 83. In pertinent part the easement stated as follows:

> Pursuant to the authority granted in Article IX(C)(1) of said Master Deed, the Association, through its Board of Directors, has authority to grant easements for access purposes. It is because of that authority and because of an error in the locating of the driveway of one unit onto another that in consideration of $1.00, receipt of which is

---

that Unit 83 was purchased in 1997. Nonetheless, it is undisputed that Unit 83 was purchased after plaintiffs purchased Unit 82.

[3] The by-laws were not made a part of the lower court record, and while we cannot verify the accuracy of the assertion that side entry garages were required in the project, plaintiffs do not dispute this contention.

hereby acknowledged, the Association grants the following easement.

There shall be an easement 10 feet wide on the side of Unit 82 that adjoins Unit 83 for purposes of ingress and egress as well as maintenance of the existing driveway and existing landscaping. This easement shall perpetually run with the land until such time, if any, the Co-owner of Unit 83 relocates his driveway to be off of Unit 82. All costs of maintenance, repair, and replacement of that driveway shall be borne by the Co-owner of Unit 83.

Defendants did not seek or obtain plaintiffs' agreement to the easement before it was recorded. Plaintiffs filed this action alleging that defendants had violated the Condominium Act and slandered title to their property by recording the easement, and requesting that the trial court quiet title to their land and remove any encumbrance and easement placed on their land without their permission. Plaintiffs then filed a motion for summary disposition, which the trial court denied following a motion hearing. Instead, the trial court granted summary disposition in favor of defendants pursuant to MCR 2.116(I)(2), stating:

The provisions of the Master Deed were expressly accepted by Plaintiffs when they purchased the Unit. The Master Deed and Bylaws ran with Plaintiffs['] property as a matter of law and contract. The language of the Master Deed is· clear and unambiguous. The Master Deed specifically provides that a driveway is a Common Element. The Master Deed also specifically provides that if any portion of a Common Element encroaches upon another Site, reciprocal easements shall exist for maintenance and it specifically gives the Association the right and the duty to grant an easement for ingress or egress. This Court finds that there is no genuine issue of material fact that the Master Deed empowered and obligated the defendant Association to grant the easement for the driveway to the Hogan Defen-

dants. Furthermore, this Court finds that Plaintiffs cannot establish claims of slander of title, breach of condominium documents or violation of the Condominium Act [MCL 559.101 *et seq.*], because the grant of the easement in the Common Element was lawful and in accordance with the Master Deed. Therefore, Plaintiffs['] Motion for Summary Disposition is denied pursuant to MCR 2.116(C)(10) and Defendants are entitled to Summary Disposition pursuant to MCR 2.116(I)(2).[4]

## II. STANDARD OF REVIEW

### A. MOTIONS FOR SUMMARY DISPOSITION

This Court's review of a trial court's decision to deny or grant summary disposition is de novo. *Herald Co v Bay City*, 463 Mich 111, 117; 614 NW2d 873 (2000). A motion under MCR 2.116(C)(10) tests the factual support for a claim and is reviewed to determine whether the affidavits, pleadings, depositions, or any other documentary evidence establishes a genuine issue of material fact to warrant trial. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). In reviewing a summary disposition motion, the Court gives the nonmoving party the benefit of all reasonable inferences. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 615; 537 NW2d 185 (1995).

---

[4] In its opinion, the trial court quoted directly from Article IX(A) and (C) of the master deed and MCL 559.140, and apparently relied on all these provisions in reaching its conclusion. We note, however, that the association expressly relied solely on Article IX(C)(1) of the master deed in recording the easement over Unit 82. Accordingly, while the trial court may have erred in relying on Article IX(A) and MCL 559.140 in support of its ruling when defendants relied solely on Article IX(C)(1) to support the easement, because plaintiffs did not raise the issue below or on appeal it has been waived. See *Colista v Thomas*, 241 Mich App 529, 539, n 3; 616 NW2d 249 (2000), and *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 17, n 1; 592 NW2d 379 (1998); see also MCR 7.212(D)(3).

The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law. *Gyarmati v Bielfield*, 245 Mich App 602, 604; 629 NW2d 93 (2001), citing *Sharper Image v Dep't of Treasury*, 216 Mich App 698, 701; 550 NW2d 596 (1996).

### B. INTERPRETATION OF CONTRACTS

The construction and interpretation of an unambiguous contract is a question of law that we review de novo. *Henderson v State Farm Fire & Casualty Co*, 460 Mich 348, 353; 596 NW2d 190 (1999); *Morley v Automobile Club of Michigan*, 458 Mich 459, 465; 581 NW2d 237 (1998); see also *Michigan Nat'l Bank v Laskowski*, 228 Mich App 710, 714; 580 NW2d 8 (1998), and *Zurich Ins Co v CCR & Co (On Rehearing)*, 226 Mich App 599, 604; 576 NW2d 392 (1997). Whether terms of a contract are ambiguous is also a question of law that we will review de novo. *Henderson, supra*; *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996). In determining whether a contract provision is ambiguous, we are to give the language used its ordinary and plain meaning, *Michigan Nat'l Bank, supra*, to see if "its words may reasonably be understood in different ways." *Trierweiler v Frankenmuth Mut Ins Co*, 216 Mich App 653, 656-657; 550 NW2d 577 (1996). "[I]f a word or phrase is unambiguous and no reasonable person could differ with respect to application of the term or phrase to undisputed material facts," summary disposition should be granted to the proper party. *Henderson, supra* at 353, citing *Moll v Abbott*

*Laboratories,* 444 Mich 1, 28, n 36; 506 NW2d 816 (1993).

### C. STATUTORY INTERPRETATION

As *Macomb Co Prosecutor v Murphy,* 464 Mich 149, 158; 627 NW2d 247 (2001), observed:

> In considering a question of statutory construction, this Court begins by examining the language of the statute. We read the statutory language in context to determine whether ambiguity exists. If the language is unambiguous, judicial construction is precluded. We enforce an unambiguous statute as written. Where ambiguity exists, however, this Court seeks to effectuate the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished. [Citations omitted.]

Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used, *Phillips v Jordan,* 241 Mich App 17, 22, n 1; 614 NW2d 183 (2000), citing *Western Michigan Univ Bd of Control v Michigan,* 455 Mich 531, 539; 565 NW2d 828 (1997). Further, the language must be applied as written, *Camden v Kaufman,* 240 Mich App 389, 394; 613 NW2d 335 (2000); *Ahearn v Bloomfield Charter Twp,* 235 Mich App 486, 498; 597 NW2d 858 (1999), and nothing should be read into a statute that is not within the manifest intent of the Legislature as evidenced from the act itself. *In re S R,* 229 Mich App 310, 314; 581 NW2d 291 (1998).

III. ANALYSIS

On appeal, plaintiffs argue that the trial court erred in finding that the driveway was a common element, and also erred in finding that Articles IX(A) and (C)(1) of the master deed and § 40 of the Condominium Act, MCL 559.140, required and permitted defendants to grant an easement that in effect authorized the encroachment of the Hogans' driveway onto Unit 82. We hold that Article IX(A) of the master deed and § 40 of the Condominium Act provide the requisite support for defendants' actions, and that summary disposition in favor of defendants was appropriate.

Article IX(A) provides:

> In the event any portion of a Site or a residential structure on a Site or Common Element encroaches upon another Site or Common Element due to . . . survey errors or construction deviations, reciprocal easements shall exist for the maintenance of such encroachment for so long as such encroachment exists, and for maintenance thereof after rebuilding in the event of any destruction.

Similarly, § 40 of the Condominium Act, as constituted when the easement was granted, provides: "To the extent that a condominium unit or common element encroaches on any other condominium unit or common element, . . . by reason of any deviation from the plans in the construction . . . a valid easement for the encroachment shall exist." MCL 559.140.

Here, the evidence clearly demonstrates that the Hogans' driveway encroached on plaintiffs' property because of a staking and survey error that occurred before the construction of the Hogans' home on the condominium site. Thus, the driveway encroachment occurred as the result of a construction deviation. As

the trial court correctly noted, "[a]n easement may be created by express grant, by reservation or exception, or by covenant or agreement." *Michigan State Hwy Comm v Canvaser Bros Building Co*, 61 Mich App 176, 181; 232 NW2d 351 (1975). The master deed (e.g., an agreement) expressly provided for an easement in this circumstance. Further, § 40 of the act also expressly provides for an easement. MCL 559.140.

Whether the trial court's finding that the driveway was a common element is correct is irrelevant to our decision. Article III(O) of the master deed defines "site," "unit," or "condominium" as "the enclosed space constituting a single complete residential site in Brentwood . . . and shall have the same meaning as the term 'Condominium Unit' which is defined in the Act." Subsection 4(3) of the act defines condominium unit as "that portion of the condominium project designed and intended for separate ownership and use, as described in the master deed, regardless of whether it is intended for residential, office, industrial, business, recreational . . . or any other type of use." MCL 559.104(3). Further, subsection 3(7) defines "common elements" as "the portions of the condominium project other than the condominium units." MCL 559.103(7). Thus, if the driveway is not a common element, it is part of the condominium unit and Article IX(A) permits and requires the disputed easement in this case.

Plaintiffs also contend that this case should be governed by MCL 559.140 as amended by 2000 PA 379. We disagree.

MCL 559.140, as amended by 2000 PA 379, provides, in part:

> To the extent that a condominium unit or common element encroaches on any other condominium unit or common element . . . by reason of any deviation from the plans in the construction . . . , a valid easement for the encroachment shall exist. *This section shall not be construed to allow or permit any encroachment upon, or an easement for an encroachment upon, units described in the master deed as being comprised of land and/or airspace above and/or below said land, without the consent of the co-owner of the unit to be burdened by the encroachment or easement.* [Emphasis added.]

Statutes are to be applied prospectively unless the Legislature's intent for retroactive application is clear. *Cheron, Inc v Don Jones, Inc*, 244 Mich App 212, 216; 625 NW2d 93 (2000). See also *People v Nuss*, 405 Mich 437, 450; 276 NW2d 448 (1979), and *Int'l Business Machines Corp v Dep't of Treasury*, 75 Mich App 604, 614; 255 NW2d 702 (1977). This principle of prospective application is "especially true when giving a statute retroactive operation will interfere with an existing contract . . . ." *Hansen-Snyder Co v General Motors Corp*, 371 Mich 480, 484; 124 NW2d 286 (1963).

The easement at issue here was recorded on October 5, 1998. Thus, in order for the amendment to have any import on plaintiffs' case, the Legislature must have clearly intended the amendment to apply retroactively. *Cheron, supra.* Because 2000 PA 379, § 1 states only that the amended statute would take immediate effect on January 2, 2001, the Legislature did not clearly express an intent for the act to apply retroactively. Because retroactive application of the amended statute will interfere with the contract rights established in Article IX(A) of the master deed, we conclude that § 40, as amended by 2000 PA 379, does

not apply to the instant case. See also *Detroit v Walker*, 445 Mich 682, 698; 520 NW2d 135 (1994), and *Hansen, supra.*

## IV. CONCLUSION

We conclude that Article IX(A) and MCL 559.140, regardless of whether the driveway was a common element or part of the condominium unit, provided the Hogans' with an easement over plaintiffs' property. Consequently, the trial court properly granted summary disposition to defendants pursuant to MCR 2.116(I)(2).

Affirmed.