*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Plaintiff-Appellant,

v

JOHN MICHAEL PENA, KRYSTLE SEWELL, and
BRITTNEY GIDDINGS,

        Defendants-Appellees.

FOR PUBLICATION
January 26, 2023
9:00 a.m.

No. 358849
Tuscola Circuit Court
LC No. 20-031393-CZ

Before: M. J. KELLY, P.J., and MURRAY and RIORDAN, JJ.

MURRAY, J.

Plaintiff Progressive Marathon Insurance Company appeals as of right the trial court's order denying its motion for summary disposition and ordering judgment as a matter of law in favor of defendants, pursuant to MCR 2.116(I)(2). In this no-fault declaratory judgment matter, we are called on to construe the recent statutory amendments that increased the minimum liability coverage required to be placed in automobile policies issued or delivered on or after July 2, 2020. MCL 500.3009. We reverse and remand for further proceedings.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case arises from an automobile accident on August 5, 2020, when defendant Giddings was involved in a three-vehicle collision where she rear-ended a 2006 Toyota Corolla Matrix. Upon impact, the Toyota propelled into oncoming traffic and collided with a motorcycle operated by defendant John Pena and occupied by defendant Krystle Sewell. Defendants Pena and Sewell were in critical condition and were transported by airlift to the hospital. Defendants later sought Personal Injury Protection (PIP) benefits from plaintiff, who insured defendant Giddings pursuant to a six-month policy that was effective March 11, 2020, and expired on September 11, 2020. The policy limited bodily injury coverage to $20,000 for any one person and $40,000 for any one accident, regardless of the number of covered automobiles or insured persons involved.

Following the accident, defendant Pena filed a tort action against defendant Giddings, and defendant Sewell was later added as a plaintiff. Plaintiff subsequently filed this declaratory action

-1-

against defendants Giddings and Pena, and later amended its complaint to add defendant Sewell, requesting the trial court's assistance in declaring the rights and obligations of the parties. Plaintiff filed its motion for summary disposition seeking a declaration that plaintiff was not obligated to provide liability coverage for any amount beyond the $20,000/$40,000 bodily injury limits contracted for in defendant Giddings' policy. Plaintiff argued that because it issued Giddings' policy before July 1, 2020, the statutorily mandated increase for policies issued and renewed after July 1, 2020 did not apply. In response, defendants Pena and Sewell requested judgment as a matter of law under MCR 2.116(I)(2), arguing that the unambiguous language of the statute mandated the heightened policy limitations for motor vehicle accidents occurring after July 1, 2020, regardless of whether the policy was issued before that time. In its reply, plaintiff argued that an automatic increase in defendant Giddings' policy would violate the federal and state Constitutions' Contracts Clauses, as plaintiff issued the policy before the statutorily mandated increase of liability coverage took effect.

The trial court denied plaintiff's motion for summary disposition and instead ordered judgment as a matter of law in favor of defendants. The trial court found that the underlying policy must be reformed to reflect the changes to the statute, which came into effect during defendant Giddings' policy term. The court further found that plaintiff knew that the policy would not conform to the statutory amendments and that defendants should not bear the burden of plaintiff's failure to conform the policy to reflect the changes to the no-fault scheme. This appeal followed.

## II. STANDARD OF REVIEW

The trial court's ruling on a motion for summary disposition is reviewed de novo. *Allstate Ins Co v State Farm Mut Auto Ins Co*, 321 Mich App 543, 550; 909 NW2d 495 (2017). Statutory interpretation is an issue of law that is also reviewed de novo. *People v Morey*, 461 Mich 325, 329; 603 NW2d 250 (1999). This Court similarly reviews constitutional questions de novo. *Aguirre v Michigan*, 315 Mich App 706, 713; 891 NW2d 516 (2016). Under MCR 2.116(I)(2), "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." " 'The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law.' " *Allstate,* 321 Mich App at 552, quoting *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002).

## III. ANALYSIS

### A. BODILY INJURY COVERAGE

The question presented here is whether legislative amendments to MCL 500.3009 automatically increased coverage limitations in policies issued before the statutory changes in coverage took effect but whose term extended beyond July 2, 2020.

When interpreting a statute, this Court is tasked with ascertaining and giving effect to the intent of the Legislature. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548; 685 NW2d 275 (2004). Because the words contained in a statute provide us with the most reliable evidence of the Legislature's intent, we must give effect to every word, phrase, and clause in the statute. *Id*. at

549. If the statutory language is clear and unambiguous, no further construction is necessary or permitted, and the statute is enforced as written. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992); *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). When a contractual provision in an insurance policy conflicts with a statute, that provision is invalid. *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 261; 819 NW2d 68 (2012) (citation omitted). "[W]hen reasonably possible, this Court is obligated to construe insurance contracts that conflict with the no-fault act and, thus, violate public policy, in a manner that renders them 'compatible with the existing public policy as reflected in the no-fault act.' " *Id*. at 257, quoting *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 599; 648 NW2d 591 (2002). Thus, reformation is the appropriate remedy when an insurance contract violates the law or public policy. *Corwin*, 296 Mich App at 256-257.

In June of 2019, the Legislature amended MCL 500.3009 as part of a collection of no-fault reform measures. See 2019 PA 22. The reforms included changes to liability coverage and raised the minimum bodily injury liability limits in automobile policies:

> (1) Subject to subsections (5) to (8), an automobile liability or motor vehicle liability policy that insures against loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle must not be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless the liability coverage is subject to all of the following limits:

> (a) Before July 2, 2020, a limit, exclusive of interest and costs, of not less than $20,000.00 because of bodily injury to or death of 1 person in any 1 accident, and after July 1, 2020, a limit, exclusive of interest and costs, of not less than $250,000.00 because of bodily injury to or death of 1 person in any 1 accident.

> (b) Before July 2, 2020 and subject to the limit for 1 person in subdivision (a), a limit of not less than $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident, and after July 1, 2020, and subject to the limit for 1 person in subdivision (a), a limit of not less than $500,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident. [MCL 500.3009.]

On the basis of this statute, plaintiff argues that the increased liability limits of $250,000/$500,000 found in MCL 500.3009(1)(a) and (b) apply only to policies "delivered or issued for delivery" after July 1, 2020.

In determining the Legislature's intended meaning of the phrase "delivered or issued for delivery," we must accord the phrase its plain and ordinary meaning, and because the no-fault act does not define the phrase, we may consult dictionary definitions. *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 516; 821 NW2d 117 (2012); *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015). The word "deliver" or its past-participial form "delivered" is defined, in relevant part, as "to take and hand over to or leave for another.*" Merriam-Webster's Collegiate Dictionary* (11th ed). See also *Fields v Suburban Mobility Auth for Regional Transp*, 311 Mich App 231, 236; 874 NW2d 715 (2015) ("The relevant definition of

'deliver' in the context of 'to serve' is 'to give into *another's* possession or keeping.' "), quoting *Random House Webster's College Dictionary* (1997) (emphasis added). The word "issue" or its past-participial form "issued" is defined, in relevant part, as "to put forth or distribute." *Merriam-Webster's Collegiate Dictionary* (11th ed). Pursuant to these definitions, we hold that the phrase "delivered or issued for delivery" under MCL 500.3009(1) can encompass both a policy that was previously delivered and left in the insured's possession and a policy that was sent out or distributed to an insured for delivery.

Reading this language in harmony with subsections (1)(a) and (b)—which regulate the minimum liability limits according to a calendar date—leads us to conclude that policies "delivered or issued for delivery" before July 2, 2020, were subject to coverage limits of $20,000/$40,000, and those after July 1, 2020, were subject to limits of $250,000/$500,000. When the statute is read in its grammatical context, no ambiguity exists. Under subsections (1)(a) and (b), the minimum liability limits are fixed by the July 1, 2020, and July 2, 2020, dates. These subsections are clearly conditioned on when a policy was "delivered or issued for delivery" under subsection (1). The fact that the statute distinguishes the liability limitations by the policy's delivery date indicates that coverage options were intended to be allocated differently. The Legislature also contemplated policies being delivered before July 2, 2020, when heightened liability coverage would take effect, and explicitly set coverage limits of $20,000/$40,000 to apply in that case. To hold that the coverage limitations in preexisting policies automatically increased on July 2, 2020, would ignore the statute's plain language distinguishing coverage between dates.

MCL 500.3009(1) indicates that its provisions are subject to subsections (5) to (8), and those subsections support the conclusion that the higher limits do not automatically apply to existing policies but instead apply to those that are new or renewed after July 1, 2020. For example, subsection (5), passed as part of 2019 PA 22, includes an option to purchase lower limits after July 1, 2020. MCL 500.3009(5) provides that "[a]fter July 1, 2020, an applicant for or named insured in the automobile liability or motor vehicle liability policy described in subsection (1) may choose to purchase lower limits than required under subsection (1)(a) and (b), but not lower than $50,000.00 under subsection (1)(a) and $100,000.00 under subsection (1)(b)." Thus, whether one is applying for insurance, or is currently subject to a policy (a "named insured"), subsection (5) ties the ability to obtain different coverage limits to the July 1, 2020, date, which can be accomplished by filing or requesting it under subsection (5). The same holds true under subsections (6) and (8), MCL 500.3009(6) and (8), which reinforce that the new coverage limits apply to policies issued or renewed after July 1, 2020. Applying the plain language of the statute, it is clear that the Legislature did not intend for the increased minimums to apply automatically to policies that had been delivered prior to July 2, 2020.

Subsection (5) was not the only reform within 2019 PA 22 that provided for changed coverage effective July 1, 2020. Indeed, MCL 500.3107c, 500.3107d, 500.3109a, and 500.3135 all contain provisions addressing modified benefits with an effective date of July 1, 2020. Because these statutes address the same subject as MCL 500.3009, they should be considered harmoniously to give reasonable effect to each of them. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998) (stating that "when this Court construes two statutes that arguably relate to the same subject or share a common purpose, the statutes are in pari materia and must be read together as one law"). Specifically, MCL 500.3107c(1) permits applicants or named insureds to choose their PIP coverage amount, but only for policies issued or renewed after July 1, 2020. When an option for

PIP coverage is selected under MCL 500.3107c(1)(b), MCL 500.3109a(2) instructs the insurer to offer an exclusion related to qualified health coverage but only for policies issued or renewed after July 1, 2020. Similarly, MCL 500.3107d(1) permits the denial of PIP benefits for policies issued or renewed after July 1, 2020, so long as certain conditions are met. These legislative amendments to MCL 500.3107c, 3107d, and 3109a, in relevant part, discuss additional coverage options solely for policies that are "issued or renewed after July 1, 2020." These amendments are similar to the heightened policy limit increases contained in the amended MCL 500.3009, which likewise apply only to policies "delivered or issued for delivery" after July 1, 2020.

The legislative reforms concerning tort liability under the no-fault act likewise impact only policies issued or renewed after July 1, 2020. Specifically, MCL 500.3135(3)(c) now subjects tortfeasors to liability for allowable expense damages exceeding any applicable limits selected under MCL 500.3107c, or without limit for allowable expenses for those who excluded PIP entirely under MCL 500.3107d. Because applicants or named insureds were only permitted to limit or exclude PIP coverage under MCL 500.3107c and 3107d in policies issued or renewed after July 1, 2020, their direct reference in MCL 500.3135 indicates that the changes in tort liability cannot affect policies issued prior to July 2, 2020. The Legislature made across the board reforms to the no-fault act explicitly for policies issued or renewed after July 1, 2020. A consideration of the act as a whole confirms the Legislature's intent that heightened liability limits under MCL 500.3009 are exclusively for policies delivered or issued for delivery after July 1, 2020. For these reasons, we conclude that the trial court erred in denying plaintiff's motion for summary disposition because MCL 500.3009 did not automatically increase liability coverage for preexisting policies whose term surpassed July 1, 2020. Because plaintiff prevails in its statutory argument, we need not address plaintiff's remaining argument that the statute violates the Contracts Clause.

Reversed and remanded for further proceedings. We do not retain jurisdiction. No costs, an issue of first impression involved.

/s/ Christopher M. Murray
/s/ Michael J. Kelly
/s/ Michael J. Riordan