*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEEP HARBOR CONDOMINIUM
ASSOCIATION, RODNEY SCHOLTEN, JILL
GOODWIN, SUE FILKINS, ANTHONY KUPRES,
JEFF SQUIRE, and DAVID HISCOCK,

        Plaintiffs-Appellants,

and

ROBERT SANFORD,

        Plaintiff,

v

MARINE ADVENTURE, LLC, DEEP HARBOR 3,
LLC, RICHARD STEPHENS, JOHN SISSON, JEFF
VANDERLIP, JOSHUA OTTING, BILL BALE,
PAUL BALOGH, RONNIE DAVIS, JAMES
BOLAND, ETHEL VISSER, HERB LANG,
DOMENIC FRANCONI, and BRIAN
BEDNARCYK,

        Defendants-Appellees.

UNPUBLISHED
December 29, 2020

No. 349471
Allegan Circuit Court
LC No. 18-060393-CK

Before: FORT HOOD, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Plaintiffs, Deep Harbor Condominium Association (the Association), Rodney Scholten, Jill Goodwin, Sue Filkins, Anthony Kupres, Jeff Squire, and David Hiscock (collectively, excluding the Association, "individual plaintiffs"), appeal by delayed leave granted[1] two orders

---

[1] *Deep Harbor Condo Ass'n v Marine Adventure LLC*, unpublished order of the Court of Appeals, entered November 13, 2019 (Docket No. 349471).

entered by the trial court. The first order granted partial summary disposition in defendants' favor on plaintiffs' complaint. We affirm this order in part, reverse in part, and remand for further proceedings consistent with this opinion. The second order at issue on appeal denied plaintiffs' motion to amend their complaint and dismissed the remaining counts of plaintiffs' complaint without prejudice. We affirm this order.

## I. BACKGROUND

Deep Harbor is a condominium project organized in accordance with the Condominium Act, MCL 559.101 et *seq*., and consists of individual boat slip condominium units, as well as various common elements. The Association was established to manage, maintain, operate, and administer Deep Harbor and its affairs. Deep Harbor's Bylaws provide that the affairs of the Association shall be governed by a board of directors, and the board of directors have "all powers and duties necessary for the administration of the affairs of the Association and may do all acts and things as are not prohibited by State law or the Condominium Documents or required thereby to be exercised and done by the Co-owners."

Each Deep Harbor co-owner is automatically made a member of the Association with a right to vote on Association matters. The value of each vote is equal to the percentage of value allocated to the co-owner's unit. The Master Deed, in turn, allocates each unit an equal percentage of value. The percentage of value allocated to each unit is also relevant to association dues. Under § 2.4 of the Bylaws, "All assessments levied against the Co-owners to cover expenses of administration shall be apportioned among and paid by the Co-owners in accordance with the percentage of value allocated to each Unit in Article V of the Master Deed . . . ."

In 2015, after acquiring title to several Deep Harbor units, defendant Marine Adventure, LLC, filed suit against the Association and its last known directors and officers, defendants John Sisson, Jeff Vanderlip, Ethel Visser, James Boland, Herb Lang, Dominic Franconi, and Brian Bednarcyk (the former board members). The nature of the claims is not apparent from the lower court record in this case, but the parties ultimately executed a settlement agreement (the Settlement Agreement) to resolve the dispute. In pertinent part, the Settlement Agreement recognized that each of 49 units held by Marine Adventure were "duly constituted and platted units reflected on the Condominium Subdivision Plans of Deep Harbor," and that Marine Adventure would be afforded the rights and privileges of a co-owner. Additionally, if Marine Adventure conveyed title to all or any of its units within 30 days of execution of the Settlement Agreement, the grantee would be deemed "a Successor and Assign and shall be afforded the same rights granted to [Marine] Adventure as provided in this Agreement." Relevant to the issues before this Court, Paragraph 7 of the Settlement Agreement also stated that "[Marine] Adventure and its Successors and Assigns are hereby released and forgiven from paying any assessments levied against" Marine Adventure's units until one of two specified conditions were met. After the Settlement Agreement was executed, Marine Adventure's lawsuit was dismissed by stipulated order. Marine Adventure then conveyed each of its units to a separate limited liability company (the Deep Harbor LLCs).

The instant lawsuit was initiated by the Association and individual plaintiffs in 2018. Individual plaintiffs all own Deep Harbor units, and most are also purported members or officers

of the Association's board of directors.[2]  In pertinent part, the defendants named in plaintiffs' complaint included Marine Adventure; the Deep Harbor LLCs, as successors and assigns of Marine Adventure under the Settlement Agreement; Richard Stephens, as a member of Marine Adventure and the Deep Harbor LLCs; and the former board members.  Counts I and III of plaintiffs' complaint sought a declaratory judgment regarding Marine Adventure and the Deep Harbor LLCs' (collectively, Marine Adventure defendants) voting rights and dues obligations.  Count V sought relief from the Settlement Agreement under the member-oppression statute, MCL 450.2489, of the Nonprofit Corporation Act, MCL 450.2101 *et seq*.

The trial court granted summary disposition of these counts under MCR 2.116(C)(8).  The court focused its analysis on the "actual controversy" requirement for a declaratory-judgment action and opined that any actual controversy that existed was between plaintiffs and the former board members for entering the Settlement Agreement.  The court concluded that plaintiffs could not state a valid cause of action against "these Defendants" for entering a valid agreement and, therefore, dismissed Counts I, III, and V of plaintiffs' complaint.  Plaintiffs' later motion for leave to file an amended complaint was denied on similar grounds.  The remainder of plaintiffs' claims were dismissed without prejudice by stipulation.

Plaintiffs' filed a delayed application for leave to appeal, in which they argued that the trial court erred by granting summary disposition and abused its discretion by denying leave to file a first amended complaint.  This Court granted plaintiffs' application and directed the parties to address two additional issues: (1) whether a settlement agreement may be collaterally attacked; and (2) whether a mutual release contained in the Settlement Agreement barred plaintiffs' claims for nonpayment of association dues.  *Deep Harbor Condo Ass'n v Marine Adventure LLC*, unpublished order of the Court of Appeals, entered November 13, 2019 (Docket No. 349471).  We will address these preliminary questions first.

## II.  COLLATERAL-ATTACK DOCTRINE AND MCR 2.612

We review questions of law de novo.  *Mack v Detroit*, 467 Mich 186, 193; 649 NW2d 47 (2002).  "A collateral attack occurs when a party uses 'a second proceeding to attack a tribunal's decision in a previous proceeding.' "  *In re Application of Indiana Mich Power Co*, 329 Mich App 397, 406; 942 NW2d 639 (2019), quoting *Workers' Compensation Agency Dir v MacDonald's Indus Prods, Inc (On Reconsideration)*, 305 Mich App 460, 474; 853 NW2d 467 (2014).  When a decision is rendered by a court of competent jurisdiction, it may not be collaterally attacked.  *In re Application of Indiana Mich Power Co*, 329 Mich App at 406 ("Only decisions that are void for

---

[2] Plaintiffs' complaint alleges that several defendants claim to be on the Association's board of directors as a result of a vote taken at a special meeting on August 18, 2018.  Counts II and IV of plaintiffs' complaint challenge the validity of the special meeting and attorney fees incurred in connection with the meeting.  These counts were dismissed by stipulation and are not at issue in this appeal.  To the extent Count V of plaintiffs' complaint and several counts of plaintiffs' proposed amended complaint raised similar claims regarding the composition of the board of directors or the August 18, 2018 special meeting, plaintiffs have not presented any arguments concerning those issues on appeal, and we need not address those matters further.  *PIC Maintenance, Inc v Dep't of Treasury*, 293 Mich App 403, 414; 809 NW2d 669 (2011).

lack of subject matter or personal jurisdiction may be collaterally attacked."). "[A] party aggrieved by a decision in an earlier proceeding instead has resort to the appellate process in the context of that same proceeding." *Id.*

Plaintiffs emphasize that their lawsuit concerns the validity of the Settlement Agreement, which they characterize as a mere "contractual agreement, not a judgment or order," such that the rules embodied in MCR 2.612(C)(3)—the court rule governing independent actions for relief from a judgment, order, or proceeding—do not apply. Although plaintiffs' focus on MCR 2.612(C)(3) does not directly address this Court's directive, plaintiffs' point is applicable to the collateral-attack doctrine too. The collateral-attack doctrine bars an attack in a subsequent proceeding on a valid *decision* reached in earlier litigation. *Id.* The order of dismissal in the 2015 litigation has not been produced by the parties, but plaintiffs' maintain that the Settlement Agreement was not referenced, incorporated, or merged in the trial court's order.[3] As defendants have yet to dispute plaintiffs' assertion regarding the order, we will accept plaintiffs' characterization of the order of dismissal for purposes of this analysis.

The Michigan Supreme Court addressed a similar situation in *Farm Bureau Mut Ins Co of Mich v Buckallew*, 471 Mich 940 (2004) (*Buckallew II*), though, like plaintiff, it decided the matter by applying MCR 2.612, rather than the collateral-attack doctrine. The dispute at issue stemmed from a wrongful-death action filed by the personal representative of two estates. *Farm Bureau Mut Ins Co of Mich v Buckallew*, 262 Mich App 169, 172; 685 NW2d 675 (2004) (*Buckallew I*), vacated by *Buckallew II*, 471 Mich at 940. The personal representative's attorney entered settlement negotiations with the tortfeasor's insurer, and they eventually agreed to settle the wrongful-death action for "the policy limits of $300,000." *Id.* at 172-173. After obtaining approval from the probate court, the personal representative dismissed the wrongful-death action pending in the circuit court. *Id.* at 173. Shortly thereafter, however, the insurer refused to honor the $300,000 settlement because it exceeded the applicable liability limit in the subject policy. *Id.* The insurer then filed a separate action to rescind or reform the settlement agreement. *Id.* The trial court determined that the parties' settlement agreement involved a mutual mistake regarding the applicable policy limits, but granted summary disposition in favor of the personal representative because the insurer bore the risk of mistake and was therefore not entitled to rescind or reform the agreement. *Id.* at 174. This Court affirmed the trial court's decision, agreed with its reasoning, and rejected the insurer's alternative arguments for reversal. *Id.* at 177-183. In lieu of granting leave to appeal, the Supreme Court likewise affirmed the trial court's decision, but vacated this Court's opinion in *Buckallew I*, explaining:

> The parties' settlement and dismissal of the earlier action took the place of a court judgment, and for purposes of this case was tantamount to a judgment. As such, plaintiff must seek relief under the principles set forth in MCR 2.612, governing relief from judgment. But the facts of this case do not warrant such relief.

---

[3] According to plaintiffs, the dismissal only said, "IT IS HEREBY ORDERED that Plaintiff/Counter-Defendant's First Amended Complaint, as well as Defendant/Counter-Plaintiff's First Amended Counter-Complaint, are hereby dismissed with prejudice and without costs to either party hereto."

-4-

Plaintiff's mistake in understanding its own policy is not a mistake or excusable neglect that can be a basis for relief under MCR 2.612(C)(1)(a). [*Buckallew II*, 471 Mich at 940.]

Because the Supreme Court's order in *Buckallew II* involved a final disposition of the application before the Court and contained a "a concise statement of the applicable facts and reasons for the decision," it constitutes binding precedent. *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

Consistent with *Buckallew II*, the parties to the 2015 litigation were required to comply with MCR 2.612 if they wished to challenge the Settlement Agreement reached in that action. MCR 2.612(C)(1) identifies several grounds on which a party may move for relief from judgment, and MCR 2.612(C)(2) establishes limitations regarding the timing of a motion filed under Subrule (C)(1). Notwithstanding these rules, MCR 2.612(C)(3) provides, "This subrule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding . . . ." But this Court has previously held that in order to assert an independent action for relief on grounds other than lack of jurisdiction, the plaintiff must establish a meritorious defense to the underlying case. *Trost v Buckstop Lure Co, Inc*, 249 Mich App 580, 588; 644 NW2d 54 (2002). To do so, the plaintiff must satisfy five elements:

(1) the judgment is one that ought not, in equity and good conscience, be enforced, (2) there is a valid defense to the alleged cause of action on which the judgment is founded, (3) fraud, accident, or mistake prevented the defendant from obtaining the benefit of the defense, (4) there was no negligence or fault on the part of the defendant, and (5) there is no adequate remedy available at law. [*Id*. at 589.]

In *Trost*, this Court affirmed the trial court's grant of summary disposition under MCR 2.116(C)(8), agreeing with its conclusion that the plaintiff failed to plead sufficient facts to state a cause of action in his complaint seeking relief from a judgment entered in an earlier lawsuit. *Id*. at 582, 586. In pertinent part, this Court determined that the plaintiff failed to establish the foregoing requirements for a meritorious defense. *Id*. at 589.

Plaintiffs' complaint is likewise deficient in this regard. Concerning the 2015 litigation, plaintiffs only alleged that Marine Adventure filed a lawsuit "asserting a variety of claims and violations." Plaintiffs did not expand upon the nature of Marine Adventure's claims or plead a valid defense to the unspecified claims. With the exception of the first element, which can perhaps be inferred from plaintiffs' allegations regarding the purported validity of the Settlement Agreement, plaintiffs' complaint does not address any of the requirements outlined in *Trost* for establishing a meritorious defense. Consequently, plaintiffs' complaint did not sufficiently plead an independent action for relief from judgment.

However, this case is distinguishable from both *Buckallew II* and *Trost* in one important respect: individual plaintiffs were not parties to the 2015 litigation. The *Buckallew II* Court concluded that the insurer had to seek redress under MCR 2.612 because the settlement and dismissal took the place of and were "tantamount to a judgment," *Buckallew II*, 471 Mich at 940, but we have not discovered any authority to suggest that a nonparty to earlier litigation can seek relief under MCR 2.612. Moreover, the meritorious defense requirements established in *Trost*

would be unworkable in this context. For instance, as a nonparty to the 2015 litigation, how could individual plaintiffs plead a defense to claims that were not asserted against them in the first place or demonstrate that they were not negligent or at fault for the settlement and dismissal? *Trost*, 249 Mich App at 589. Considering individual plaintiffs' inability to avail themselves of the remedy set forth in MCR 2.612, we conclude that *Buckallew II*'s discussion regarding the proper procedure for attacking a settlement agreement is inapplicable to nonparties.

Returning to the issue of whether a settlement agreement may be collaterally attacked, we answer this question in the affirmative as it concerns nonparties to the litigation from which the settlement agreement arose. A freestanding settlement agreement is not a decision of a court or tribunal to which the collateral-attack doctrine would generally apply. See *In re Application of Indiana Mich Power Co*, 329 Mich App at 406 (referring to bar against challenging an earlier "decision" in later litigation); *Workers' Compensation Agency Dir*, 305 Mich App at 474 ("The final decree of a court of competent jurisdiction made and entered in a proceeding of which all parties in interest have due and legal notice and from which no appeal is taken cannot be set aside and held for naught by the decree of another court in a collateral proceeding commenced years subsequent to the date of such final decree.") (quotation marks and citation omitted). Even if it could be construed as such, this Court has previously declined to apply the collateral-attack doctrine to bar claims raised by litigants who were not parties to earlier proceedings, see *In re Application of Indiana Mich Power Co*, 329 Mich App at 407, and we decline to do so in this instance.

With respect to the Association, however, *Buckallew II* dictates that parties to the previous litigation must pursue claims of the nature involved in plaintiffs' complaint in accordance with MCR 2.612. Because plaintiffs' complaint did not sufficiently plead an independent action for relief from judgment under MCR 2.612(C)(3), the trial court did not err by dismissing the Association's claims. We therefore affirm the trial court's dismissal of the Association's claims. See *Varela v Spanski*, 329 Mich App 58, 81; 941 NW2d 60 (2019) (noting that order reaching the right result should be affirmed, even if the trial court's reasons were incorrect).

## III. MUTUAL RELEASE AND VALIDITY OF THE SETTLEMENT AGREEMENT

The proper interpretation of a contract is a question of law and, therefore, reviewed de novo on appeal. *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015). The principles guiding such issues are well-settled:

> "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties[;] [t]o this rule all others are subordinate." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). "[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Id*. at 461. [*Highfield Beach at Lake Mich v Sanderson*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 343968 and 345177); slip op at 8 (alterations in original).]

Paragraph 11 of the Settlement Agreement provides:

> 11. <u>Mutual Release</u>. Adventure, on behalf of itself, its members, employees, agents, attorneys, insurers, administrators, executors, heirs, personal representatives, trustees, beneficiaries, Successors and Assigns, hereby release, acquit and forever discharge Association and the Individual Defendants [the former board members], and their officers, directors, agents, attorneys, employees, insurers, administrators, executors, heirs, personal representatives, trustees, beneficiaries, successors and assigns from and against any and all manners of action, causes of action, suits, debts, accounts, claims, complaints, judgments, rights, damages, costs, loss of services, expenses, attorneys' fees, claims and demands of whatsoever kind, in law or in equity, known or unknown, foreseen or unforeseen, which Adventure has through the date of this Agreement, except for claims to enforce this Agreement or claims involving a breach of this Agreement. Association and the Individual Defendants, on behalf of themselves, their officers, directors, agents, employees, attorneys, insurers, administrators, members, co-owners, executors, heirs, personal representatives, trustees, beneficiaries, successors and assigns, hereby release, acquit and forever discharge Adventure and its members, agents, employees, attorneys, insurers, administrators, executors, heirs, personal representatives, trustees, beneficiaries, Successors and Assigns from and against any and all manners of action, causes of action, suits, debts, accounts, claims, complaints, judgments, rights, damages, costs, loss of services, expenses, attorneys' fees, claims and demands of whatsoever kind, in law or in equity, known or unknown, foreseen or unforeseen, which they have through the date of this Agreement, except for claims to enforce this Agreement or claims involving a breach of this Agreement.

The foregoing language is unambiguous in its terms and broadly releases "any and all" claims held by the Association and former board members "through the date of this Agreement," excepting from the release only "claims to enforce this Agreement or claims involving a breach of this Agreement." See *Skotak v Vic Tanny Int'l, Inc*, 203 Mich App 616, 619; 513 NW2d 428 (1994) ("[T]here is no broader classification than the word 'all.' In its ordinary and natural meaning, the word 'all' leaves no room for exceptions."). Plaintiffs' various claims for nonpayment of dues are premised on Marine Adventure defendants' breach of obligations established by the Master Deed and Bylaws, not the Settlement Agreement. As such, the mutual release in the Settlement Agreement bars plaintiffs' claims with respect to dues that accrued before the Settlement Agreement was executed.

Plaintiffs do not dispute this interpretation of the mutual release. Instead, they contend that the entire Settlement Agreement is void because the former board members lacked authority to enter the Settlement Agreement without consent of the co-owners. Plaintiffs reason that the Settlement Agreement improperly amended the Master Deed and Bylaws by modifying the percentage of value attributable to Deep Harbor units without complying with rules requiring consent of the co-owners. We disagree.

There is an important distinction between an agreement that conflicts with another contract and an agreement that conflicts with statutory law. When a later agreement alters the terms of an

earlier one, there is generally no impediment to judicial enforcement of the later agreement because "[p]arties to a contract are at liberty to modify or waive the rights and duties established by a contract." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 102; 878 NW2d 816 (2016). "[A] party alleging waiver or modification must establish a mutual intention of the parties to waive or modify the original contract." *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 372; 666 NW2d 251 (2003). "The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract." *Id*. at 373. On the other hand, a contract that violates the law is void and will not be enforced by Michigan courts. *Kendzierski v Macomb Co*, 503 Mich 296, 312; 931 NW2d 604 (2019) ("[P]arties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy.") (quotation marks and citation omitted). See also *Neal v Dep't of Corrections*, 297 Mich App 518, 527; 824 NW2d 285 (2012) (stating that an agreement in violation of the law, even in the form of a stipulated order, is void).

Section 8 of the Condominium Act identifies several items that must be included in a master deed, including "[a] statement showing the total percentage of value for the condominium project and the separate percentages of values assigned to each individual condominium unit . . . ." MCL 559.108(c). The Condominium Act also dictates that common expenses must be assessed against condominium units "in proportion to the percentages of value or other provisions as may be contained in the master deed for apportionment of expenses of administration." MCL 559.169(3). Additionally, "[t]he method or formula used to determine the percentage of value of units in the project for other than voting purposes shall not be modified without the consent of each affected co-owner and mortgagee." MCL 559.190(4).

Article V of the Master Deed addresses the percentage of value allocated to Deep Harbor units:

> The percentages of value assigned to each Unit are set forth in paragraph C. below. The percentages of value have been determined on the basis of the relative allocable expenses of maintenance for the Units, with resulting percentages reasonably adjusted to total precisely 100%. The percentage of value assigned to each Unit shall be determinative of each Co-owner's interest in the Common Elements, the proportionate share of each respective Co-owner in the proceedings and expenses of administration and the value of each Co-owner's vote at meetings of the Association of Co-owners. The percentage of value allocated to each Unit may be changed only with the prior written approval of each institutional holder of a first mortgage lien on any Unit in the Project and with the unanimous consent of all of the Co-owners expressed in an amendment to this Master Deed, duly consented to and recorded.

In Paragraph C, the Master Deed states that each unit is considered to have an equal percentage of value. In accord with the foregoing, the Master Deed also grants each co-owner "an undivided and inseparable right with other Co-owners in the Common Elements of the Condominium Project," while the Bylaws mandate that "each Co-owner shall be entitled to one vote for each Condominium Unit owned, the value of which shall be the total of the percentages allocated to the

Unit owned by such Co-owner," and "[a]ll assessments levied against the Co-owners to cover expenses of administration shall be apportioned among and paid by the Co-owners in accordance with the percentage of value allocated to each Unit . . . ."

On its face, the Settlement Agreement does not modify the percentage of value allocated to Marine Adventure defendants' units or the units held by any other co-owner. Plaintiffs' argument regarding the validity of the Settlement Agreement stems from the following portion of Paragraph 7 of that agreement:

> Notwithstanding anything in the Condominium Documents (or any amendments thereto) to the contrary, Adventure and its Successors and Assigns are *hereby released and forgiven from paying any assessments levied against the Adventure Units* by Association until the occurrence of the first of the following events for each Unit: (i) Adventure or its Successors and Assigns conveys title to an Adventure Unit after expiration of the thirty (30) days following the execution of this Agreement; or (ii) Adventure or its Successors and Assigns leases an Adventure Unit. Upon the occurrence of one of the preceding conditions, the Co-owner of the Adventure Unit as of the conveyance or lease shall be responsible for a pro-rata portion of the monthly assessment attributable to the particular Adventure Unit for the month of conveyance or lease as provided by the Condominium Documents, as well as all assessments levied against the Adventure Unit from the date of conveyance or lease moving forward. [Emphasis added.]

Plaintiffs imply that by releasing and forgiving the Marine Adventure defendants from their obligation to pay assessments, this provision effectively and unlawfully modified the percentages of value set forth in the Master Deed. We disagree.

The Settlement Agreement releases and forgives Marine Adventure defendants from *paying* assessments until one of the specified conditions are met. According to the Master Deed, the percentages of value were "determined on the basis of the relative allocable expenses of maintenance for the Units"—not on the basis of assessments actually paid by each co-owner. Thus, the provision temporarily releasing and forgiving Marine Adventure from paying assessments does not equate with modifying the percentage of value allocated to each unit. Nor does it modify the method or formula used to determine the percentage of value allocated to each unit without co-owner consent in violation of MCL 559.190(4) (requiring co-owner consent for modification of method or formula used to determine percentages of value). Rather, it is more akin to a temporary waiver of the Association's right to collect assessments. *Quality Prod & Concepts Co*, 469 Mich at 374 ("As [the Supreme Court has] stated in other contexts, a waiver is a voluntary and intentional abandonment of a known right.").

As noted earlier, the Condominium Act also requires common expenses to be "assessed against the condominium units in proportion to the percentages of value or other provisions as may be contained in the master deed for apportionment of expenses of administration." MCL 559.169(3). The foregoing provision of the Settlement Agreement does not run afoul of this mandate. The Association is still required to apportion the expenses among the co-owners in proportion to the percentage of value allocated to each co-owner's unit. By releasing and forgiving Marine Adventure "from paying any *assessments levied* against the Adventure Units," the

Settlement Agreement recognizes that assessments can still be levied in the usual manner, even if Marine Adventure defendants are temporarily released from their obligation to pay the assessments (emphasis added). Of course, the practical effect of this provision is to leave the Association with a severe deficit in its annual budget, but it does not operate to levy assessments against individual plaintiffs' in an amount that is disproportionate to the percentage of value assigned to their respective units.[4] It is a long-held principle in this state that a court will not interfere with an otherwise lawful contract merely because the agreement later proves to be imprudent. *Terrien v Zwit*, 467 Mich 56, 69-70; 648 NW2d 602 (2002); *Lee v Stratford Arms Hotel Co*, 236 Mich 520, 530; 211 NW 103 (1926). Because plaintiffs have not established that the Settlement Agreement violates the Condominium Act, we reject plaintiffs' contention that the Settlement Agreement, including the mutual release contained in Paragraph 11, was void.

## IV. SUMMARY DISPOSITION

A trial court's ruling regarding a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition may be granted if "[t]he opposing party has failed to state a claim on which relief can be granted." MCR 2.116(C)(8). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *El-Khalil*, 504 Mich at 159 (emphasis omitted). This Court reviews the pleadings, "accept[ing] the factual allegations in the complaint as true and constru[ing] them in a light most favorable to the nonmoving party." *Kuznar v Raksha Corp*, 481 Mich 169, 176; 750 NW2d 121 (2008). Written instruments attached to the complaint are considered part of the pleadings.[5] *El-Khalil*, 504 Mich at 163, citing MCR 2.113(C). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil*, 504 Mich at 160.

The trial court granted summary disposition of Counts I, III, and V on the basis of its conclusion that no actual controversy existed between plaintiffs and defendants. The trial court opined that the gravamen of plaintiffs' complaint was their dissatisfaction with the Settlement Agreement executed by the former board members. Consequently, the court reasoned that plaintiffs, collectively, may have a claim against the former board members, and individual plaintiffs may have a claim against the Association, but plaintiffs could not properly sue "these Defendants" for entering and complying with a facially valid agreement. Plaintiffs argue on appeal that the trial court erred in this regard because Counts I and III alleged legitimate disagreements between plaintiffs and Marine Adventure defendants regarding their rights and obligations, while Count V alleged a valid claim of member oppression under the Nonprofit Corporation Act.

"In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment,

---

[4] Plaintiffs recognize as much by observing that the "Settlement Agreement effectively ensures that the association will remain in perpetual poverty as it limps by each year on 46% of its budgeted income."

[5] The Settlement Agreement, Master Deed, and Bylaws were attached to plaintiffs' complaint and can therefore be considered part of the pleadings for purposes of MCR 2.116(C)(8). *El-Khalil*, 504 Mich at 163.

whether or not other relief is or could be sought or granted." *Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America v Central Mich Univ Trustees*, 295 Mich App 486, 495; 815 NW2d 132 (2012) (*UAW*), quoting MCR 2.605(A)(1). The "actual controversy" requirement is met when "a plaintiff pleads and proves facts demonstrating an adverse interest necessitating a judgment to preserve the plaintiff's legal rights." *Mich Assoc of Home Builders v City of Troy*, 504 Mich 204, 225; 934 NW2d 713 (2019). An actual controversy has also been described as existing "when a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve that plaintiff's legal rights." *League of Women Voters of Mich v Secretary of State*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 350938 and 351073); slip op at 7, lv pending. Although the trial court may not resolve hypothetical issues under the guise of a declaratory judgment, declaratory relief may be granted before actual injury or loss occurs. *UAW*, 295 Mich App at 495.

Count I of plaintiffs' complaint reads as follows:

35. The Settlement Agreement purports to relieve Marine Adventure and its Successors and Assigns from the obligation to pay association dues, which in turn prevents Marine Adventure and its Successors and Assigns from voting in the Association for as long as they are not paying association dues.

36. In exchange for foregoing its right to vote in the Association, Marine Adventure and its Successors and Assigns received the right to appoint one director to the Association's board of directors.

37. Upon information and belief it is the position of the Defendants that Marine Adventure and its Successors and Assigns are entitled to vote in the Association and appoint one director to the Association's board of directors.

WHEREFORE, Plaintiffs request that this Court, pursuant to MCR 2.605 and all other relevant statutes and case law, enter a judgment declaring that:

a. Marine Adventure and the Deep Harbor LLCs are not able to vote in the Association for as long as they are not paying association dues, and

b. Marine Adventure and the Deep Harbor LLCs may appoint one director to the Association's board of directors for as long as they are unable to vote; together with all other appropriate, just and equitable relief that this Court deems proper under the circumstances.

Plaintiffs maintain that Count I involves an actual controversy because plaintiffs and Marine Adventure defendants hold differing position regarding these matters. But a mere disagreement regarding the proper interpretation of a contract does not automatically equate with an actual controversy for purposes of alleging a proper action for declaratory judgment. See *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 545; 904 NW2d 192 (2017) (rejecting argument that declaratory judgment was appropriate simply because the parties disagreed about contract interpretation). Declaratory relief is a remedy, not a claim, *Wiggins v City of Burton*, 291 Mich App 532, 561; 805 NW2d 517 (2011), and no recognized cause of action is discernable from the foregoing allegations. Additionally, a plaintiff cannot establish the existence of an actual

controversy for purposes of seeking declaratory relief by asserting legal rights held by another. See *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No. 2*, 309 Mich App 611, 624-625; 873 NW2d 783 (2015) (concluding that board of trustees did not have standing under declaratory-judgment rule when the dispute involved unilateral modification of collective bargaining agreements regarding benefits owed to retirees). Count I of plaintiffs' complaint describes a disagreement regarding Marine Adventure defendants' rights under the Settlement Agreement, but does not identify what rights *plaintiffs* hold that they seek to preserve by way of a declaratory judgment. Consequently, Count I fails to state a claim upon which relief can be granted.

Count III of plaintiffs' complaint includes only three substantive allegations:

> 42. The Settlement Agreement purports to relieve Marine Adventure and its Successors and Assigns from the obligation to pay association dues.

> 43. These provisions of the Settlement Agreement are contrary to both the Michigan Condominium Act, MCL § 559.101, et seq, and the Association's Master Deed and Bylaws and thus, the Settlement Agreement is invalid and unenforceable.

> 44. Upon information and belief, it is the position of Defendants that the Settlement Agreement is valid and enforceable.

Following these allegations, plaintiffs ask the trial court to declare the relevant provisions of the Settlement Agreement invalid and unenforceable and declare that Marine Adventure defendants are obligated to pay past and future association dues.

Unlike Count I, Count III at least attempts to tie individual plaintiffs' request for declaratory judgment to rights derived from the Condominium Act and Deep Harbor's governing documents, albeit without identifying those rights with any specificity. That said, while plaintiffs focus on the nature of their disagreement with defendants, the trial court's ruling emphasized that no actual controversy existed between plaintiffs and the named defendants. "When standing is at issue in a case, 'the question is whether the person whose standing is challenged is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable.' " *League of Women Voters*, ___ Mich App at ___; slip op at 6-7, quoting *Allstate Ins Co v Hayes*, 442 Mich 56, 68; 499 NW2d 743 (1993). A litigant has standing "when the Legislature has intended to confer standing on the litigant under a particular statutory scheme." *League of Women Voters*, ___ Mich App at ___; slip op at 7. "[W]henever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010).

Section 107 of the Condominium Act allows a co-owner to "maintain an action against any other co-owner for injunctive relief or for damages or any combination thereof for noncompliance with the terms and provisions of the condominium documents or this act." MCL 559.207. Additionally, under § 115, "[a] person . . . adversely affected by a violation of or failure to comply with this act, rules promulgated under this act, or any provision of an agreement or a master deed may bring an action for relief in a court of competent jurisdiction." MCL 559.215(1). Thus, individual plaintiffs in their capacities as co-owners have standing to challenge Marine Adventure

-12-

defendants' breach of the assessment requirements set forth in the Master Deed and Bylaws or other violations of the Condominium Act.

Count III, however, did not allege a freestanding violation of the condominium documents or Condominium Act. Rather, plaintiffs recognized that Marine Adventure defendants relied on the terms of the Settlement Agreement as authority for not paying dues. Paragraph 7 of the Settlement Agreement provides, "Notwithstanding anything in the Condominium Documents (or any amendments thereto) to the contrary, Adventure and its Successors and Assigns are hereby released and forgiven from paying any assessments levied against [Marine Adventure defendants'] Units," until the units are sold or leased. The question then becomes whether individual plaintiffs could seek to avoid the consequences of this provision through a declaratory-judgment action asking the court to find this provision invalid and unenforceable because of purported conflicts with the Condominium Act, Master Deed, and Bylaws.

"An agreement to settle a pending lawsuit is a contract, governed by the legal rules applicable to the construction and interpretation of other contracts." *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 663; 770 NW2d 902 (2009). Rights and obligations arising under a master deed or condominium bylaws are also contractual in nature. See *Tuscany Grove Ass'n*, 311 Mich App at 393 (interpreting bylaws as a contract); *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002) (applying contract principles to dispute regarding mandates of condominium master deed). "We enforce contracts according to their terms, as a corollary to the parties liberty to enter into a contract." *Reicher*, 283 Mich App at 664. When the terms of a contract are unambiguous, the contract must be enforced as written. *Id*. at 665. "Parties to a contract are at liberty to modify or waive the rights and duties established by a contract." *Bank of America*, 499 Mich at 102.

On appeal, plaintiffs expand on the nature of their allegations, explaining that they anticipate proving that all Deep Harbor units have an equal percentage of value, and it is this percentage of value that determines the amount of assessments for which each co-owner is responsible. Plaintiffs imply that by releasing Marine Adventure defendants from their obligation to pay assessments, the Settlement Agreement essentially modified the percentage of value attributable to all Deep Harbor units, without complying with modification procedures established in the Master Deed and the Condominium Act.

Plaintiffs' argument fails to appreciate that the trial court granted summary disposition under MCR 2.116(C)(8), which tests the *legal* sufficiency of the complaint. *El-Khalil*, 504 Mich at 159. Thus, the question before the trial court was not what plaintiffs' would prove with further discovery, but rather whether the allegations of plaintiffs' complaint, accepted as true, could justify recovery. *Id*. at 159-160; *Kuznar*, 481 Mich at 176. Plaintiffs did not allege that the Settlement Agreement improperly modified the percentages of value established by the Master Deed. They simply asserted that the Settlement Agreement relieved Marine Adventure defendants from the obligation to pay association dues. And for the reasons more fully explained in Part III of this opinion, we do not construe the Settlement Agreement itself as creating an unlawful de facto modification. Instead, the Association, through its former board members, intentionally and voluntarily abandoned its right to collect assessments from Marine Adventure defendants. *Quality Prod & Concepts Co*, 469 Mich at 374. To the extent that this temporary reprieve from assessments is inconsistent with the Master Deed or Bylaws, that inconsistency does not support

a valid cause of action because parties are free to waive contractual rights and duties. *Bank of America*, 499 Mich at 102.

On the other hand, Michigan courts will not enforce a contract that violates the law. *Kendzierski*, 503 Mich at 312. This general rule is applicable to settlement agreements in the same manner as other contracts. See *Neal*, 297 Mich App at 524 ("[T]o the extent that the settlement agreement between the parties is inconsistent with applicable statutes, those provisions are unenforceable."). While plaintiffs could, in theory, allege a cognizable cause of action if Paragraph 7 of the Settlement Agreement violated the Condominium Act, plaintiffs have not identified any provision of the act that bars an association's board of directors from waiving collection of dues for a limited period in settlement of pending litigation. Accordingly, Count III of plaintiffs' complaint fails to state a claim upon which relief could be granted, and the trial court did not err by granting summary disposition of that count.

The last count that was dismissed by way of summary disposition is Count V. In relevant part, plaintiffs' complaint alleges that the former board members, Marine Adventure, and Stephens entered the Settlement Agreement relieving Marine Adventure defendants from their obligation to pay association dues and have continued to abide by and enforce the terms of the Settlement Agreement. According to plaintiffs, "[t]hese actions were and are illegal, willfully unfair and oppressive to Plaintiffs as members of the Association that are obligated to pay association dues." Citing MCL 450.2489, plaintiffs asked the trial court to cancel the Settlement Agreement and declare Marine Adventure defendants responsible for past and future assessments.

MCL 450.2489(1) creates a cause of action through which a member of a corporation may "establish that the acts of the directors, shareholders, members, or others in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the director, member or shareholder." Construing substantially similar statutory language used in § 489 the Business Corporation Act, MCL 450.1101 et *seq*., this Court concluded that a statutory claim of shareholder oppression required the plaintiffs to plead and prove four elements: "(1) that they were shareholders of the corporation; (2) that defendants were 'directors' or 'in control of the corporation'; (3) that defendants engaged in acts; and (4) that those acts were 'illegal, fraudulent, or willfully unfair and oppressive' to the corporation or to them as shareholders." *Franks v Franks*, 330 Mich App 69, 99; 944 NW2d 388 (2019), quoting MCL 450.1489(1).

At the beginning of their complaint, plaintiffs alleged that each individual plaintiff owned a Deep Harbor unit. Pursuant to the Master Deed and Bylaws, individual plaintiffs' ownership of Deep Harbor units meant that they were automatically members of the Association, and such members are given standing to pursue a member-oppression action under MCR 450.2489(1).[6]

---

[6] MCL 450.2489(1) creates a cause of action for "[a] director of a corporation that is organized on a directorship basis, a shareholder of a corporation that is organized on a stock basis, or a member of a corporation that is organized on a membership basis . . . ." According to the Articles of Incorporation filed with the state, the Association is organized on a membership basis. Michigan Department of Licensing and Regulatory Affairs, *Articles of Incorporation for Deep Harbor Condominium Association* <https://cofs.lara.state.mi.us/SearchApi/Search/Search> [enter Deep

Plaintiffs further alleged that the former board members were parties to the 2015 litigation, and it is evident from the Settlement Agreement that those defendants participated in the 2015 litigation in their capacity as former board members. Count V of the complaint alleges that the former board members engaged in acts that were "illegal, willfully unfair and oppressive" to dues-paying members of the Association, namely, entering into and abiding by the Settlement Agreement that released Marine Adventure defendants' from their obligation to pay assessments. Accepting these allegations as true, individual plaintiffs articulated a valid cause of action against the former board members in Count V of the complaint.[7]

Moreover, if a plaintiff successively establishes grounds for relief, MCL 450.2489(1) specifically authorizes a circuit court to grant appropriate relief, including, but not limited to, "cancellation of, alteration of, or an injunction against a resolution or other act of the corporation," MCL 450.2489(1)(c), or "direction or prohibition of an act of the corporation or of shareholders, members, directors, officers, or other persons that are parties to the action," MCL 450.2489(1)(d). Considering the court's broad discretion to "grant relief as it considers appropriate" and the explicit authority to cancel or alter an act of the corporation, it appears that the trial court could grant individual plaintiffs' requested relief if they adequately proved their member-oppression claim. The trial court seemed to recognize that individual plaintiffs could assert a claim against the former board members for improperly consenting to the Settlement Agreement. Despite acknowledging the viability of such a claim, however, the trial court failed to consider the substance of each particular count and instead treated them all as improper and generic complaints against Marine Adventure defendants. The trial court erred in this regard and Count V should not have dismissed with respect to the former board members.

Count V also refers to the actions of Marine Adventure and Stephens (Marine Adventure's managing member) with respect to the Settlement Agreement as "illegal, willfully unfair and oppressive." Plaintiffs do not allege that these defendants acted as "directors, shareholders, members or others in control of the corporation," MCL 450.2489(1), in connection with the Settlement Agreement. Nonetheless, MCR 2.205(A) requires joinder of all "persons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief . . . ." "The purpose of the rule is to prevent the splitting of causes of action and to ensure that all parties having a real interest in the litigation are present." *Mason Co v Dep't of Community Health*, 293 Mich App 462, 489; 820 NW2d 192 (2011). "A party is indispensable to a case if that party has an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience." *Mather Investors, LLC v Larson*, 271 Mich App 254, 257-258; 720 NW2d 575 (2006) (quotation marks and citations omitted). Because plaintiffs seek a declaration that certain provisions of the Settlement Agreement are invalid and unenforceable, Marine Adventure and Stephens, as parties

_____

Harbor Condominium Association in the "Search by Entity Name" field, click search, select Deep Harbor Condominium Association from the search results, click View Filings, click link for Articles of Incorporation filed May 6, 1987] (accessed September 25, 2020).

[7] Whether the described actions were willfully unfair and oppressive, as that term is defined in MCL 450.2489(2), remains a question of fact.

to the contract, and the Deep Harbor LLCs, as Marie Adventure's successors under the contract, undoubtedly have an interest in the proceedings that would be affected if the trial court granted plaintiffs' requested relief. Additionally, MCL 450.2489(1)(d) contemplates the possibility that a court may grant relief in the form of an order directing or prohibiting acts of "other persons that are parties to the action." Accordingly, individual plaintiffs also alleged a valid cause of action seeking declaratory relief with respect to Marine Adventure defendants and Stephens. With respect to individual plaintiffs, the trial court erred by granting summary disposition of Count V under MCR 2.116(C)(8).

## V. LEAVE TO AMEND COMPLAINT

"This Court reviews grants and denials of motions for leave to amend pleadings for an abuse of discretion." *Kincaid v City of Flint*, 311 Mich App 76, 94; 874 NW2d 193 (2015) (quotation marks and citation omitted). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Id*.

When a trial court grants summary disposition under MCR 2.116(C)(8), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5). "A court must give a particularized reason for denying leave to amend a pleading, and acceptable reasons for denial include undue delay, bad faith or dilatory motive by the party seeking leave, repeated failures to cure deficiencies after previously allowed amendments, undue prejudice to the nonmoving party, and futility." *Kostadinovski v Harrington*, 321 Mich App 736, 743; 909 NW2d 907 (2017). "An amendment is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim." *Yudashkin v Linzmeyer*, 247 Mich App 642, 651; 637 NW2d 257 (2001) (quotation marks and citation omitted).

Plaintiffs argue on appeal that the trial court abused its discretion by denying their motion for leave to file an amended complaint on futility grounds. We disagree. Plaintiffs' proposed amended complaint focused primarily on Marine Adventure defendants' noncompliance with the Master Deed and Bylaws by failing to pay association dues. Proposed Counts I through V and IX were all factually premised on Marine Adventure defendants' failure to pay dues. Assuming, without deciding, that each of these proposed counts stated legally sufficient causes of action, it does not automatically follow that the trial court abused its discretion by denying leave to amend on futility grounds.

"Denial of an amendment based on futility avoids the necessity of two motions, one for amendment and a later one for summary disposition; therefore, in determining futility, the court should apply the same standards it would employ in deciding a subsequent motion for summary disposition." *Longhofer*, Michigan Court Rules Practice (7th ed), § 2118.5. Marine Adventure defendants' responsibility for assessments arose under the Master Deed and Bylaws and was therefore contractual in nature. *Tuscany Grove Ass'n*, 311 Mich App at 393; *Rossow*, 251 Mich App at 658. It is well-settled that parties are free to modify or waive contractual rights and duties. *Bank of America*, 499 Mich at 102. Although plaintiffs' proposed amended complaint carefully omitted reference to the Settlement Agreement in Proposed Counts I through V and IX, Marine Adventure defendants attached the Settlement Agreement to their brief opposing plaintiffs' motion

to amend and its implications were already addressed by the trial court in the context of summary disposition.

It is undisputed that the Master Deed grants each unit within Deep Harbor an equal percentage of value. The Bylaws provide that "[a]ll assessments levied against the Co-owners to cover expenses of administration shall be apportioned among and paid by the Co-owners in accordance with the percentage of value allocated to each Unit . . . ." The Settlement Agreement, however, states, "Notwithstanding anything in the Condominium Documents (or any amendments thereto) to the contrary, Adventure and its Successors and Assigns are hereby released and forgiven from paying any assessments levied against the Adventure Units" until their units are sold or leased, whichever occurs first. This sentence unambiguously releases Marine Adventure defendants from their dues obligations until one of the specified conditions is met. Moreover, the prefatory language of this sentence demonstrates that the parties contemplated that the release might be inconsistent with the Master Deed and Bylaws and intended for the release to be effective despite any such inconsistencies. While plaintiffs clearly wish to avoid enforcement of this portion of the Settlement Agreement, they do not dispute that the Settlement Agreement was, in fact, executed by the former board members on behalf of the Association. Because Michigan courts must enforce the Settlement Agreement, like any other contract, according to its unambiguous terms, *Reicher*, 283 Mich App at 664-665, plaintiffs' claims stemming from Marine Adventure defendants' failure to pay dues would fail as a matter of law. The trial court did not abuse its discretion by denying plaintiffs' motion to amend with respect to Proposed Counts I through V and IX on futility grounds.

Proposed Count VIII reiterated and expanded upon individual plaintiffs' member-oppression claim, adding new allegations of allegedly oppressive conduct and altering the parties against whom the allegations were made. More specifically, Count VIII identifies five specific actions: (1) execution of the Settlement Agreement by the prior board members and Marine Adventure without co-owner consent; (2) Marine Adventure defendants' failure to pay Association expenses in proportion to the percentage of value assigned to their units; (3) Marine Adventure defendants' continued voting at Association meetings; (4) the prior board members' failure to collect assessments from Marine Adventure defendants; and (5) the Association's failure to collect assessments from Marine Adventure defendants. Proposed Count VIII further alleges that each of these actions were willfully unfair and oppressive because they interfered with individual plaintiffs' rights under the Master Deed and Bylaws and burdened individual plaintiffs with a greater financial responsibility for Association expenses, while simultaneously diluting their voting power.

Despite the similarities between individual plaintiffs' original Count V and Proposed Count VIII, we are not persuaded that the trial court abused its discretion by denying leave to amend for purposes of adding Proposed Count VIII. MCL 450.2489(1) establishes a cause of action that a member of a corporation may bring to establish that "acts of the directors, shareholders, members, or others in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the director, member, or shareholder." Although specific relief requested by the plaintiff may require joinder of additional necessary parties as discussed in Part IV of this opinion, nothing in the plain language of the member-oppression statute suggests that a plaintiff's claim can be premised on allegedly oppressive acts of anyone other than "the directors, shareholders, members, or others in control of the corporation . . . ." *Id*. Most of

the allegations in Proposed Count VIII involve actions taken by Marine Adventure defendants or the Association without involvement of the former board members, and therefore do not fall within the scope of a member-oppression claim under MCL 450.2489. Despite the inclusion of other allegations regarding the former board members' actions, when viewed as a whole, Proposed Count VIII was clearly defective, and the trial court did not abuse its discretion by denying plaintiffs' motion for leave to file an amended complaint.

## VI. CONCLUSION

In sum, we conclude that the collateral-attack doctrine does not bar individual plaintiffs' action challenging the validity of the Settlement Agreement. The Association, however, was required to pursue its claims regarding the Settlement Agreement in accordance with MCR 2.612, and plaintiffs' complaint did not sufficiently plead an independent action for relief from judgment under MCR 2.612(C)(3). We therefore affirm the trial court's summary disposition order with respect to claims asserted by the Association. We also affirm the trial court's summary disposition order with respect to Counts I and III because the trial court correctly determined that those counts failed to state claims upon which relief could be granted. Count V, on the other hand, asserted a cognizable claim for declaratory relief on behalf of individual plaintiffs in connection with a properly pleaded claim of member oppression under MCR 450.2489(1), and the trial court erred by dismissing that count under MCR 2.116(C)(8). We therefore reverse the trial court's summary disposition order to the extent that it dismissed individual plaintiffs' member-oppression claim. Concerning the trial court's denial of plaintiffs' motion for leave to amend their complaint, we are not persuaded that the trial court abused its discretion and therefore affirm its order denying plaintiffs' motion.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ David H. Sawyer
/s/ Deborah A. Servitto

-18-